UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
_____

UNITED STATES OF AMERICA,

    -v-                                                        CASE NO. 1:23-CR-217 (CJN)

RENEE FATTA,

        Defendant.
_____

## SENTENCING MEMORANDUM

DATED:    October 10, 2023
               Syracuse, New York

                                                LISA PEEBLES
                                                Federal Public Defender
                                                Bar Roll No. 507041
                                                Office of the Federal Public Defender
                                                4 Clinton Square, 3rd Floor
                                                Syracuse, New York 13202
                                                (315) 701-0080

I.      **Renee Fatta**

Renee Fatta's life was riddled with physical and emotional abuse, mental illness, and addiction. Her story is a remarkable journey through trauma, tragedy, perseverance, determination, and her ultimate recovery. Renee's history and characteristics, the offense conduct, and her rehabilitative efforts support a sentence of a $1,000 fine coupled with a $500 order of restitution. No statutory purpose of punishment would be served by imposing any term of incarceration or probation.

II.     **Renee's History and Characteristics**

Humans are a product of their environment; a life constantly invaded by substance abuse, manipulation, and both physical and mental anguish is a recipe for pain, grief, and sadness. Growing up, Renee was forced to experience incredible trauma. She was subjected to years of emotional and physical abuse by her stepfather. One time, he held her up to the wall by her neck and forced his fingers down her throat -- an image she will never forget. She grew up never feeling the love of a parent. Her mother was not a nurturing presence and had her own traumas to work through. Renee also witnessed her stepfather abuse her mother. His rageful outbursts were often a product of his unpredictable drunkenness. When Renee was 10 years old, her parents filed a person-in-need-of-supervision application. Renee was then placed into the foster care system in which she spent five years in two foster homes. She dropped out of school in the ninth grade and worked at the East Syracuse Walmart, then Embassy Suites, and eventually moved

to Kansas to live with a boyfriend. When that relationship ended, Renee moved back to New York. She was 19 when she returned and met Joshua Lehman, the man who would become the father of her son. Lehman was horribly abusive to her. He cracked Renee's jaw, punched her eye, and smashed her in the head. She fled to Vera House, a safe haven for victims of domestic abuse, when her son was six months old. Her next relationship, with William Roger Jr., resulted in marriage. As in her previous relationships, Renee was verbally and emotionally abused. Roger was controlling and jealous and called her demeaning names. In 2013, Renee had enough, left Roger and moved to Cicero. This is when her life spiraled out of control and she turned to drugs.

      To deal with the negative emotions that came with the years of abuse and manipulation, Renee used the drugs to numb her pain. This pattern began at an early age but escalated exponentially in her early 30s. At age 12, she began using marijuana to help her with feelings of anxiety and insomnia. At 15, she was smoking a half pack of cigarettes per day and developed an alcohol problem. At 17, she started using cocaine. At age 32, she began using heroin daily. And 34, she began using molly daily. She nearly killed herself. Renee overdosed on heroin seven times. One time, she smoked K2, a marijuana synthetic, resulting in a 12-hour seizure. She was hospitalized and had to be airlifted from Utica to the Albany Medical Center. She was in a coma for two weeks.[1]

---

[1] See Albany Medical Center Hospital Records dated January 11, 2017 filed under seal.

### III.    Rehabilitative Efforts

Renee began her rehabilitative efforts in 2017.[2] She was not under court order nor was anyone forcing her to stop using drugs. She wanted to change. After witnessing two junkies, much older than her, sitting in a run-down apartment sticking needles in their arms, Renee realized that pathetic life would be hers in 10 years. This epiphany led her to detox and methadone treatment. Renee's journey had its share of ups and downs. She relapsed a few times, but that did not put an end to her efforts to get clean. Rather, she used moments of weakness to strengthen her resolve. Each time she relapsed, she expressed regret, identified the cause, and set new goals. It was important to Renee that she no longer be dependent on others, to become a better mother to her son, and to work through her familial relationships.

To meet her goals, Renee participated in both one-on-one and group counseling. Once she started her rehabilitation program at Crouse Hospital, she immediately began to note how much better she felt. She regularly spoke to her counselor about proper coping skills, such as postponing and distraction to help her maintain sobriety. As her recovery progressed, she made leaps in improving her mental health and self-confidence and in her relationship with her family. She had to resolve the troubles lingering from her childhood and past relationships. She confronted her negative emotions and worked on avoiding scenarios that functioned as triggers for her to crave drugs.

---

[2] See Crouse Hospital records filed under seal.

Renee also participated in group therapy, where she met others who were in similar situations, and they helped her progress through her treatment. Learning to properly work with others through her rehabilitation had a bit of a learning curve. At first, she struggled in following the rules of the facility and effectively cooperating at the group therapy sessions. Eventually, she opened up to find what caused her to act out or rely on drugs and to correct her behavior. She eventually provided meaningful feedback and advice for others; she was commended several times by her counselor for doing so. Renee not only completed her rehabilitation at Crouse Hospital, but also became a pillar to support the rehabilitative efforts of others.

### IV.   Renee Today

Renee has been sober for over four years and has no desire to ever use drugs again. She recognizes the harm she caused not only to herself but to the people who care deeply for her – namely, her son. During rehab, Renee was always worried about how she could amend her relationship with him. Now she has seen her efforts to reconnect come to fruition. She has a fantastic relationship with him, which was a goal that she had throughout the rehabilitation process. She met her goal of destroying her dependency on drugs.

Moreover, Renee has seemingly ended the cycle of abusive relationships and is engaged to Daniel Ballard, a man with whom she feels secure, comfortable, and happy with. She has taken enormous strides to become the person she is today, the person who would never think about drugs when confronted with an inconvenience,

the person who appropriately handles any problems she may have with someone else, the person who is dedicated to her family.

### V. Offense Conduct

Renee Fatta, like so many broken people, sought a connection with a group cause. She was vulnerable but never political, although her mother and stepfather were Trump supporters who regularly talked about politics. Renee's mistake was relying on information she read on social media sites such as Facebook, YouTube, and Instagram. That is where she learned about various claims that Donald Trump and his followers were putting out to the public about the 2020 presidential election being stolen. She met a man on Facebook, Scott Columbus, who also believed the stolen election claims. The two decided to drive to the scheduled rally on January 6, 2021. They had no plan to do anything other than listen to Trump and his supporters. Renee was not a member of any organization, but it was a chance for her to rally for a cause. She did not arm herself with a weapon. She was not wearing a disguise, nor did she post any inflammatory information on her social media accounts. She simply intended to attend a rally at the Ellipse.

When she got there, she listened to Trump speak, ate a hotdog, went to the bathroom, then followed the crowd marching toward the Capitol. When Renee reached the Capitol, it had already been breached. She walked inside for a total of three minutes. She did not vandalize or steal from any office. Rather, as soon as she noticed others doing so, she left the office she was in. When she encountered the officers who were conducting crowd control on the people within Capitol, she left.

Once outside, she took a selfie.

Renee followed the crowd that day -- a decision she regrets. She fully recognizes the error of her thought processes, her actions, and the ignorance she possessed when at that time she believed the election had been stolen. She is embarrassed by her actions and any affiliation with the crowd of Trump supporters. She's led a difficult life under difficult circumstances, and she persevered. Any term of probation or incarceration would be counterproductive to her mental well-being, given the trauma she endured throughout her life. She does not require policing to follow societal rules. She has been policing herself for the past four years. She has dedicated her life to her sobriety, her faith, and her son.

The purposes of sentencing, therefore, would be more than adequately served by imposing a $1,000 fine and no period of probation or incarceration. Renee recognizes that she should not have entered the premises, but she did not build further upon her trespass by committing another crime. A period of supervision would provide nothing more than an emotional setback for Renee. As someone with an extensive past of manipulative and controlling relationships, a period of supervision would potentially bring back those feelings of being cornered and therefore would not serve the purpose it is meant to.

Dated:   October 10, 2023
       Syracuse, New York               LISA A. PEEBLES, Esq.
                                             Federal Public Defender
                                             Bar Roll No. 507041
                                             Office of the Federal Public Defender
                                             4 Clinton Square, 3rd Floor
                                             Syracuse, New York 13202
                                             (315) 701-0080


cc:     Rebekah Lederer, AUSA (*via CM/ECF*)